UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JOHN DAVID BRADLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:22-CV-19-SNLJ |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff John Bradley's application for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff now seeks judicial review of the Administrative Law Judge's ("ALJ") decision. The case is fully briefed. As explained below, the ALJ's decision is not supported by substantial evidence on the record as a whole and is reversed and remanded.

**I.   Procedural History**

Plaintiff was born in 1981. Plaintiff filed an application for Disability Insurance Benefits on February 28, 2018, alleging an onset of disability of February 23, 2018. His claim was rejected, and he requested a hearing by an ALJ. After the hearing, the ALJ issued an unfavorable decision, finding that plaintiff was not disabled. Plaintiff filed for review by the Appeals Council, and the Appeals Council denied plaintiff's request for

1

review. Thus, the ALJ's decision is the final decision of the Commissioner. Plaintiff seeks judicial review.

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *id.* § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A); *id.* § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a), 416.920(a). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a

slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d). "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." Soc. Sec. Ruling 85-28 (listing basic work activities). The claimant carries the burden to show that an impairment is severe. *Kirby*, 500 F.3d at 707–08.

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled— regardless of age, education, and work experience—and this ends the analysis. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is

3

nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history. . . ." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If the ALJ determines that the claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, then burden of production shifts to the Commissioner to show that the claimant maintains the RFC to perform other work that exists in significant numbers in the national economy. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Though the burden of production shifts to the commissioner, the claimant keeps the burden of persuasion to prove disability. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### III.   The ALJ's Decision

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 23, 2018.  At Step Two, the ALJ found that plaintiff has the following severe impairments:

1. history of fractured clavicle, ribs, left hip, back and sacrum,
2. bipolar disorder,
3. depression,
4. anxiety,
5. personality disorder,
6. attention deficit hyperactivity disorder,
7. posttraumatic stress disorder, and
8. substance abuse in early remission.

[Tr. 18.]  The ALJ held that there was insufficient medical documentation to support a finding that plaintiff had impairments of a punctured lung or neuropathy because the medical records did not show that these issues persisted for more than 12 months or that they would result in death.  *Id.*

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At Step Four, the ALJ found that plaintiff had, in part, the following RFC:

> [Plaintiff] is able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes. The claimant can occasionally respond to and have interaction with supervisors, coworkers and the general public.

[Tr. 21.]  The ALJ found that plaintiff had moderate limitations on social interaction, but that he:

5

is able to interact appropriately with his health care providers. He is able to go shopping, which requires him to have social interaction. He is able to spend time with his family. The claimant testified that he is married, lives with his wife and 3 children (aged 7, 8, and 11 years old), goes to the store twice a week, and uses the Internet to check in with friends/Facebook.

[Tr. 20.]  The ALJ stated that he had considered the medical opinions and prior administrative medical findings.  [Tr. 21.]  The ALJ determined that plaintiff's medically determinable impairments could cause his symptoms, but that plaintiff's claims regarding the intensity, persistence, and limiting effects of his symptoms were not entirely corroborated by the evidence in the record.  *Id.*  [Tr. 22–23.]  The ALJ recognized that Social Security Administration regulations required him to evaluate the supportability and consistency of each medical opinion, as well as the medical sources' specialization, the sources' relationship to plaintiff, and other factors.  [Tr. 24.]

The ALJ thought a medical opinion from a July, 2018 consultative psychological examination conducted by Jerry Cunningham, Psy. D., partially persuasive, stating:

> [Dr. Cunningham's opinions that plaintiff has moderate limitations in interacting appropriately with supervisors, coworkers, and the public] are supported by the contemporaneous examination. They are consistent with the limited treatment he has required for his impairments. They are consistent with the mental status examinations contained within the record that showed few deficits in his functioning. They are also consistent with the fact he is able to [sic] [sentence ends with sentence fragment.]

[Tr. 25.]  The ALJ also thought the opinions of mental health provider Glenda Counts, APRN, partially persuasive, stating:

> The record shows that [plaintiff] would have limitations imposed by his impairments. However, the record does not support that he would have marked limitations, would be absent two days a month, and off task 10% of the time. They are not consistent with the fact he is able to live with his family, his ability to go shopping, and use the internet to use Facebook

6

[Tr. 25.]  The ALJ thought that plaintiff's mental impairments caused:

> moderate difficulties with understanding, remembering, or applying information; concentration, persistence or maintain pace; and adapt and manage oneself that result in limitations, including able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes. Further, the claimant's severe mental impairments also cause moderate difficulties with their ability to interact with others that result in limitations, including can occasionally respond to and have interaction with supervisors, coworkers and the general public.

At Step Five, the ALJ concluded that plaintiff had no past relevant work experience that fit the RFC.  However, relying on the testimony of a vocational expert, the ALJ concluded that plaintiff could perform jobs such as a food service worker, lab equipment cleaner, and order filler, which all had significant number available in the national economy.  [Tr. 26.]  Accordingly, the ALJ determined that plaintiff was not disabled.

## IV.   Standard of Review

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the whole record.  42 U.S.C. §§ 405(g); 1383(c)(3).  Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)) (alteration in

7

original). The Court must also consider any evidence that fairly detracts from the ALJ's decision. *Id.* The Court must give the record a "searching inquiry" and balance the weight of the evidence in favor of the ALJ's decision against the weight of the evidence that detracts from the ALJ's decision. *Burress v. Apfel*, 141 F.3d 875, 878 (8th Cir. 1998). "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992); *see also Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citing cases).

For claims filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings under 20 C.F.R. § 404.1520c. The new regulations state that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Under the new regulations, the "supportability" and "consistency" of the evidence are the two most important factors in evaluating the medical opinions in the record, and the ALJ must explain how these two factors were considered. 20 C.F.R. § 404.1520c(b)(2); *see also Id.* § 404.1520c(c) (enumerating other factors). An ALJ commits legal error if the ALJ fails to comply with relevant Social Security regulations, which includes the discussion of § 404.1520c factors. *See Lucus v. Saul*, 960 F.3d 1066. 1069–70 (8th Cir. 2020) ("The failure to comply with SSA regulations is more than a drafting issue, it is legal error."); *Berry v. Kijakazi*, No. 4:20-CV-890-RLW, 2021 WL 4459699, at

8

*8 (E.D. Mo. Sept. 29, 2021) (citing *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (unpublished)).

The Court cannot "fill in the gaps" for the ALJ: if the ALJ does not provide some explanation for a finding of inconsistency or supportability, the Court must reverse. *Lucus*, 960 F.3d at 1069 (quoting *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005)); *see also Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ: even if different conclusions could be drawn from the same evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).

V.   **Discussion**

Plaintiff argues that remand is necessary because the ALJ did not support his RFC with substantial evidence when the medical opinions of two different practitioners—which the ALJ found partially persuasive and incorporated into his opinion—recommended greater limitations on social interactions than did the ALJ's RFC. [Doc. 8.]

9

### a. Evaluation of the Medical Opinions

From her Medical Source Statement, Nurse Counts noted several moderate limitations[1] on plaintiff's behavior from plaintiff's bipolar disorder and anxiety disorder. Specifically, Nurse Counts said that plaintiff had moderate limitations on:

1. the ability to make simple work-related decisions,

2. the ability to complete a normal workday and workweek without interruption from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods,

3. the ability to work in coordination with or proximity to others without being distracted by them,

4. the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes,

5. and the ability to accept instructions and respond appropriately to criticism from supervisors.

[Tr. 618–19.] Nurse Counts also opined that plaintiff would have to miss two days of work per month and would be off task at work at least 10% of the time. [Tr. 618.] The ALJ rejected Nurse Counts's findings because they were "not consistent with the fact [plaintiff] is able to live with his family, his ability to go shopping, and use the internet to use Facebook."

Plaintiff saw Dr. Cunningham for a mental health examination in July 2018. Dr. Cunningham thought plaintiff was "inconsistent with reporting of symptoms and would give up easily on some tasks." [Tr. 497.] Ultimately, Dr. Cunningham concluded that

---

[1] A moderate limitation is an impairment level that is "compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." [Tr. 618.]

10

plaintiff "has moderate problems interacting appropriately with supervisors, co-workers and the general public," that plaintiff has "authority problems and interpersonal relationship problems" and that plaintiff has "moderate difficulty responding to usual work situations and to changes in routine work settings." [Tr. 502.]  The ALJ did not comment on these moderate problems or whether Dr. Cunningham's conclusions were consistent with or supported by the evidence.  Instead, the ALJ explained that Dr. Cunningham's opinion was consistent with and supported by evidence.  [Tr. 25, 502.]

    The Court agrees with plaintiff that the ALJ failed to explain why Nurse Counts's and Dr. Cunningham's additional limitations should not be incorporated into the RFC. Likewise, the ALJ failed to explain how their medical opinions were consistent with and supported by the medical evidence and how they were not.

    First, the ALJ failed to adequately address the supportability and consistency of Nurse Counts's opinion.  The ALJ did not state which records support some of Nurse Counts's findings, and which detract from those findings.  The plaintiff's daily activities that the ALJ cites as inconsistent with the medical evidence—his spending time with family, occasionally shopping with his wife, and scrolling through Facebook—has little relationship with the moderate limitations noted by Nurse Counts, such as the ability to accept instructions and respond appropriately to criticism from supervisors.  It is unclear from the ALJ's brief discussion how these daily activities show that plaintiff can properly interact with supervisors, coworkers, and the general public.  Nor does this explanation adequately reflect plaintiff's ability to handle criticism.  Likewise, the ALJ does not explain why he rejected Nurse Counts's conclusion that plaintiff would miss two days of work per

11

month or be off-task 10 percent of the time, as plaintiff's daily activities do not show that these limitations are unnecessary. [Tr. 25.] As to plaintiff's daily activities, plaintiff testified that he could only go out accompanied by his wife on these outings and that he could only tolerate being out for no more than 90 minutes. [Tr. 44, 46.] These daily activities do not definitively establish that plaintiff could function independently in a workday. To be clear, there could be some reasons why Nurse Counts's limitations should not be fully accepted, but those reasons are not present in the ALJ's decision.

This Circuit has established a distinction between a plaintiff functioning at home and functioning at work, a distinction that the ALJ did not discuss. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 2003) ("This court has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity."). At the very least, it remains questionable how Plaintiff's reported activities have some bearing on his ability to function in a work environment, to interact with peers and supervisors, to remain on-task for the whole workday, or to handle criticism or adverse interactions. *See Hill v. Berryhill*, No. 18-CV-15-MAR, 2019 WL 699897, at *9 (N.D. Iowa Feb. 20, 2019) (compiling Eighth Circuit cases). For the same reasons, plaintiff's other activities—caring for personal hygiene, doing laundry, shopping with his wife, paying bills, going to church, using public transportation [Tr. 20, 23–24]—do little to support a finding that Nurse Counts's conclusions are inconsistent with the medical evidence. None of these activities foreclose the limitations that Nurse Counts identified. Thus, the ALJ's finding that Nurse Counts's opinion was inconsistent with other evidence

is insufficient: the ALJ has failed to adequately explain the two factors of "supportability" and "consistency" as required by the Social Security Regulations.

Second, the ALJ does not examine the extent to which Dr. Cunningham's conclusions were unsupported or inconsistent with the record. Instead, the ALJ highlights that Dr. Cunningham's opinions are "consistent" with much of the record evidence and testimony, before trailing off into an unfinished sentence. [Tr. 25.] Though Dr. Cunningham found that plaintiff reported inconsistent symptoms—for example, plaintiff's report that he slept all the time but also that he had trouble sleeping [Tr. 494, 501]—Dr. Cunningham did not doubt plaintiff's reported anger problems with others or that plaintiff has unstable relationships. [Tr. 501.] Dr. Cunningham also thought that plaintiff would even have moderate problems responding to "usual work situations," which the ALJ did not contradict. [Tr. 502.] Likewise, the fact that plaintiff gave minimal effort and easily gave up on the tasks given to him by Dr. Cunningham could support a moderate problem with interacting appropriately with supervisors at work. [Tr. 497, 502.]

As in *Lucus v. Saul*, the Commissioner here suggests that the rest of the ALJ's opinion was supported by substantial evidence, so the ALJ's failure to discuss the SSA factors is of no consequence. *See* 960 F.3d at 1070; [Doc. 11 at 9–10, 12–13] (recounting other evidence, such as administrative findings, plaintiff's conservative treatment history, inconsistent plaintiff testimony, and other RFC accommodations). The Commissioner's argument is actually a red herring that ignores the narrower issue on appeal: the issue is not whether the entire RFC was supported by substantial evidence, but whether the ALJ followed SSA regulations requiring him to adequately explain the consistency and

13

supportability of the medical opinions that he rejected. Like in *Lucus*, the ALJ's insufficient explanations do not comport with SSA regulations on evaluating the medical opinions—which require discussion on the consistency and supportability of medical opinions—and so that is itself reversible error. 20 C.F.R. § 404.1520c(b)(2); *cf. Lucus*, 960 F.3d at 1070. The Commissioner also points to some evaluations done by Nurse Counts that could indicate plaintiff could properly interact with others. [Doc. 11 at 11] (citing [Tr. 556, 563, 570, 577, 684, 591, 598, 613, 624, 640]). For instance, the Commissioner points out that Nurse Counts's own treatment notes shows that plaintiff appeared "alert, oriented, calm, cooperative, friendly" and that he had "normal speech, euthymic affect, logical thoughts, intact memory, good insight and judgment, and normal psychomotor activities." *Id.* The ALJ refers to these same records [Tr. 23], he argues that these indicate a lack of "significant symptoms such as suicidal ideations, psychosis, or panic attacks." Although these records support a finding that plaintiff was not suffering from significant symptoms such as thoughts of suicide, the ALJ's reference does not discuss how these records show a lack of the moderate limitations opined by Nurse Counts and Dr. Cunningham.

The Commissioner's interpretation of Nurse Counts's records could provide reasons why Nurse Counts's ultimate evaluation should be discounted; but they are reasons missing from the ALJ's decision. If these inconsistent records were part of the ALJ's reasoning, then he should have incorporated these inconsistencies into his evaluation—and partial rejection—of Nurse Counts's medical opinion. Instead, the Commissioner's arguments are the kind of *post hoc* reasoning that this Court cannot rely on. *See Burlington Truck*

14

*Lines, Inc. v. United States*, 371 U.S. 156, 168–169 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action . . . an agency's discretionary order [must] be upheld, if at all, on the same basis articulated in the order by the agency itself."). The Commissioner cannot enter the scene and provide reasons for why the ALJ rejected a medical source's opinion when the ALJ did not sufficiently provide that evaluation. *See Lucus*, 960 F.3d at 1069 ("Like the district court, we do not understand the purported inconsistencies identified by the ALJ. And absent some explanation for finding an inconsistency where none appears to exist, we will not fill in the gaps for the ALJ.") (cleaned up). As plaintiff points out, the narrow issue is whether the ALJ sufficiently articulated an explanation on how he evaluated the supportability and consistency of the medical opinions. [Doc. 12 at 2–3]. Without sufficient explanation as to why the ALJ chose not to credit some of Nurse Counts's evaluations, it cannot be said that the ALJ complied with SSA regulations on how to weigh conflicting medical opinions.

Likewise, the ALJ considered Dr. Cunningham's opinion partially persuasive, but he failed to explain how he incorporated Dr. Cunningham's opinion into the RFC or resolve which portions of his opinion were unpersuasive. *See Ferguson v. Saul*, No. 20-3147-CV-S-MDH-SSA, 2021 WL 3215097, at *4 (W.D. Mo. July 29, 2021) (requiring remand when the "ALJ did not explain how he incorporated these limitations into the RFC or provide reasons for discounting the limitations in sitting and standing as required by SSR 96-8p."). Though the ALJ included some greater limitations for plaintiff in the RFC then did Dr. Cunningham—for example, limiting plaintiff to only perform simple work-related decisions [Tr. 21, 502]—plaintiff convincingly argues that these limitations do little to

15

account for plaintiff's problems in interacting with others. [Doc. 12 at 2.] Even if plaintiff is limited to only occasionally interacting with others, there is a concern those limited interactions will not be the kind of normal, healthy, and fruitful interactions expected of a peer in the workplace. Additionally, Dr. Cunningham opined that, though plaintiff would perform the tasks asked of him, he put in minimal effort and would give up easily. [Tr. 497]. There is also a concern that plaintiff's anti-social behavior could be triggered if a supervisor criticizes him for this lack of motivation, which could lead to plaintiff's termination from a job. *See* [Tr. 53] (testimony of vocational expert that an individual could not sustain work if that individual could not respond appropriately to criticism). It may well be that an RFC limitation to only occasional interaction is no guarantee that plaintiff's symptoms are fully accommodated in the RFC. [Doc. 12 at 2.] For these reasons, the ALJ decision lacks a sufficient explanation as to why plaintiff's cooperative meetings with medical providers [Tr. 20, 22–23] is inconsistent with the medical opinions opining that he has difficulty interacting with supervisors, peers, and the public.

The ALJ's reliance on the opinion of the state agency consultant also does little to resolve the contradictions between the medical opinions. As plaintiff argues [Doc. 8 at 11, Doc. 12 at 4], the ALJ found the opinion of the state agency consultant to be wholly persuasive, but he failed to note the inconsistencies between that opinion and the opinions of Nurse Counts and Dr. Cunningham. SSR 96-8p ("The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."). In resolving the inconsistencies between the medical opinions, the ALJ failed to elaborate on the 20 C.F.R. § 404.1520c factors. [Tr. 24–25.] The ALJ

needed to explain how these inconsistencies were resolved but failed to do so. *See Batson v. Kijakazi*, No. 20-03251-CV-S-WBG, 2022 WL 501405, at *2 (W.D. Mo. Feb. 18, 2022). Even if the ALJ relied on other evidence in finding that some of plaintiff's reported symptoms were not as severe as plaintiff claims—for example, plaintiff's conservative course of treatment and the effectiveness of medication—this other evidence still does not adequately show that the RFC adequately accounts for plaintiff's behavioral problems. This is especially true in view of two different medical opinions to the effect that plaintiff suffers moderate problems in interacting with others.

Though an ALJ's explanation "need not be exhaustive, boilerplate or blanket statements will not do." *Lucus*, 960 F.3d at 1069 (cleaned up); *see* [Tr. 24] (stating that the ALJ considered all the 20 C.F.R § 404.1520c factors). The ALJ erred because he "either ignored or failed to discuss facts highly relevant to the factors listed" in § 404.1520c. *Id.* at 1069.

### b. The Error Is Not Harmless

For remand, plaintiff must show that the error was not harmless and that the ALJ would have decided differently if the error had not occurred. *Lucus*, 960 F.3d at 1069 (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)).

As discussed, the ALJ's error results in an RFC that is not supported by substantial evidence. It is unclear why the ALJ did not incorporate the limitations opined by Dr. Cunningham and Nurse Counts or why he discounted some of their findings—the reasons given do not sufficiently explain the discrepancies. The testimony of the vocational expert,

17

in response to hypothetical questioning by plaintiff's lawyer, shows that the error was not harmless.  In response to questioning, the vocational expert testified that there would be no jobs available for plaintiff if his hypothetical RFC had any of these additional limitations:

- being off task more than 15 percent of the time in an eight-hour workday,
- missing work two times per month,
- taking only one unscheduled 15-minute break per day,
- if plaintiff could not respond appropriately to criticism from a supervisor or respond appropriately to work-related stress,
- if plaintiff works at 85 percent speed of the average worker, or
- if plaintiff had to work in isolation from other people 6.5 hours out of an 8-hour workday.

[Tr. 53–54.]  These are the kinds of limitations that could reasonably be added to the RFC based on the medical opinions of Dr. Cunningham and Nurse Counts.  As the vocational expert testified, if any one of these additional limitations were present, there would be no jobs available to plaintiff, and plaintiff would be found totally disabled.  Under these circumstances, it was doubly important for the ALJ to explain why he discounted the medical opinions and why he crafted the RFC the way he did.  Accordingly, the Court cannot say that the RFC is supported by substantial evidence.

On remand, the ALJ must consider all the limitations set forth by Nurse Counts and Dr. Cunningham and either incorporate them into the RFC or explain why they should not be.  The ALJ must specify which of the purported limitations are consistent with and supported by the medical evidence and which are not, with reference to evidence in the record.  Finally, the ALJ must explain why plaintiff's daily home life activities—such as interacting with family, occasionally shopping with his wife, or using the internet—are inconsistent with the moderate problems identified by Nurse Counts and Dr. Cunningham.

18

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Order.

Dated this 27th day of September, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE